IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | Jointly Administered |
| CLOVIS L. PRINCE, et al., | § | Case No. 09-43627 |
| | § | (Chapter 7) |
| Debtors. | § | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | § | |
| | § | |
| MICHELLE CHOW, Chapter 7 Trustee, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adv. Proc. No. 10-4214 |
| | § | |
| CLOVIS L. PRINCE and KATHERINE | § | |
| M. ROBINSON AS TRUSTEES OF THE | § | |
| CLOVIS L. PRINCE, KATHERINE M. | § | |
| ROBINSON AND TAMIKA D. PRINCE | § | |
| TRUST, KATHERINE ROBINSON, and | § | |
| P&A REAL ESTATE, INC., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION REGARDING PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT AND RELATED MOTIONS**

The chapter 7 trustee brought this adversary proceeding seeking to avoid and
recover allegedly fraudulent transfers of real property, among other things.   The
proceeding is before the Court on the chapter 7 trustee's motion for a partial summary
judgment, the responses of Clovis L. Prince and Katherine M. Robinson, the plaintiff's
replies, and Ms. Robinson's motion to allow her to significantly amend her original
response.   Ms. Robinson filed her motion to amend on the day of the hearing on the
plaintiff's motion for summary judgment.   The Court took all of the motions under
advisement at the conclusion of the hearing on November 1, 2011, in order to prepare this
detailed written ruling.

1

## I.    THE SUMMARY JUDGMENT STANDARD

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure.  *See* FED. R. BANKR. P. 7056.  The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the "pleadings, depositions, answers to interrogatories, and affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Material issues are those that could affect the outcome of the action.  *Wyatt v. Hunt Plywood, Co. Inc.,* 297 F.3d 405, 409 (5th Cir. 2002).

The manner in which this showing can be made depends upon which party will bear the burden of persuasion at trial.  Here, the burden of establishing the existence of the elements of a voidable transfer rests on the plaintiff, *see, e.g., In re GWI PCS I, Inc.*, 230 F.3d 788 (5th Cir. 2000), and the plaintiff likewise bears the burden of establishing the prerequisites for turnover, *see, e.g., Yaquinto v. Greer*, 81 B.R. 870, 878 (N.D. Tex. 1988).  Accordingly, the plaintiff must support her motion for summary judgment "with credible evidence -- using any of the materials specified in Rule 56(c) -- that would entitle [her] to a directed verdict if not controverted at trial."  *Celotex*, 477 U.S. at 331; *Grogan v. Garner*, 498 U.S. 279, 286 (1991).  If the plaintiff succeeds in establishing a claim for turnover or a fraudulent transfer under the Bankruptcy Code or applicable state law, the burden of establishing any defenses to avoidability or collection shifts to the defendant.  *See, e.g., In re Consolidated Capital Equities Corp.*, 175 B.R. 629 (Bankr. N.D. Tex. 1994) (finding that the transferee bears the burden of proving the requirements of §550(b)).  *See also* 11 U.S.C. §§ 542(b) and 553.

In this case, the plaintiff's motion for summary judgment, the responses, and the plaintiff's replies set forth the following body of uncontested facts.

## II.     BACKGROUND

On November 13, 2009, Clovis L. Prince and Crown Project Management, Inc. d/b/a Prince & Associates filed voluntary petitions for relief under chapter 7 of the Bankruptcy Code.   In addition, on November 17, 2009, C. Prince & Associates Consulting, Inc. filed a voluntary petition under chapter 7.   The plaintiff is the duly-appointed chapter 7 trustee of the three debtors.   The Court is jointly administering the three cases in the bankruptcy case underlying this adversary proceeding.

### A.     The Plaintiff's Complaint

The plaintiff brought this action by filing a complaint on September 15, 2010.   In her complaint, as amended, the plaintiff alleges that the various debtors fraudulently transferred nine residential real properties to the Clovis L. Prince, Katherine M. Robinson, and Tamika D. Prince Trust (the "Trust") or P&A Real Estate, Inc. between July 2007 and September 2009, as follows:

    a.    Lots 8 and 9 of Block 2 in Rose Rock, Oklahoma City, Oklahoma ("Rose Rock Property") to P&A Real Estate, Inc. on or about July 10, 2007;

    b.    Lots 14, 15 and 16 of Block Two in Rose Rock, also known as 4808 Rose Rock Drive, Oklahoma City, Oklahoma ("4808 Rose Rock Property") (Lot 14 was transferred to the Trust on July 10, 2007; Lots 15 and 16 were transferred to the Trust on June 18, 2007);

    c.    400 Gettysburg St., Jackson, Tennessee 38305 (the "Gettysburg Property") to the Trust on or about November 6, 2008;

    d.    420 Branding Iron Way, Fairview, Texas (the "Branding Iron Property") to the Trust on or about November 7, 2008;

    e.    9101 Norwich Dr., McKinney, Texas 75071 (the "Norwich Property") to the Trust on or about September 18, 2009;

    f.    9505 George Bush Dr., McKinney, Texas 75070 (the "Bush Property") to the Trust on or about October 23, 2009;

    g.    1005 Lone Pine Dr., Little Elm, Texas 75068 (the "Lone Pine Property") to the Trust on or about September 18, 2009;

h.    927 Oakland Hills Drive, Fairview, Texas (the "<u>Oakland Hills Property</u>") to the Trust on or about September 18, 2009; and

i.    1330 Shinnecock Court, Fairview, Texas 75069 (the "<u>Shinnecock Property</u>") to the Trust.

The plaintiff alleges that Ms. Robinson is in possession of bank accounts and other property that belongs to the bankruptcy estate. The plaintiff also alleges that Ms. Robinson has collected post-petition rents from the allegedly fraudulent transferred properties. The plaintiff seeks turnover of all monthly rental payments made to Ms. Robinson from November 13, 2009 to the date the properties are returned to the estate, which total no less than $103,000, according to the plaintiff.[1] Finally, the plaintiff seeks turnover of insurance proceeds in the sum of $27,305.63 received by Mr. Prince as a result of a post-petition car accident involving his 2002 Lexus, but deposited by Ms. Robinson without authorization from the plaintiff or this Court.

The plaintiff's amended complaint contains four counts: Count One, seeking to recover the prepetition transfers of the debtors' interest in the real property as fraudulent pursuant 11 U.S.C. §§ 548 and 550; Count Two, seeking to recover the transfers the debtors' interest in the real property as fraudulent pursuant to Texas Business and Commerce Code §§ 24.001 *et seq.* (the "Texas Uniform Fraudulent Transfer Act") and Oklahoma Statutes tit. 24 § 112 *et. seq.* (the "Oklahoma Uniform Fraudulent Transfer Act"), made applicable by 11 U.S.C. § 544(b)(1); Count Three, seeking to recover the transfers to the Trust as transfers of an interest of the debtors in property to a self-settled trust or like device pursuant to 11 U.S.C. § 548(e)(1);[2] and Count Four, seeking an

---

[1] The plaintiff calculated this figure based on Ms. Robinson's deposition testimony regarding the monthly rental for each of the properties as well as the records from the bank account she established for the Trust prior to the debtors' bankruptcies.

[2] Congress added § 548(e) to the Code as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109–8, § 1042 (2005).

accounting of the monies Ms. Robinson has received from the real properties and turnover to the estate of the postpetition rents and postpetition insurance proceeds pursuant to 11 U.S.C. §§ 541 and 542.

### B.    The Plaintiff's Motion for Summary Judgment

The plaintiff filed her motion for summary judgment on July 7, 2011.  The motion addresses the following claims: Count One, seeking a summary judgment avoiding the real property transfers pursuant to §§ 548 and 550 of the Bankruptcy Code; a portion of Count Two, seeking a summary judgment avoiding and recover the real property transfers pursuant to the Texas Uniform Fraudulent Transfer Act ("TUFTA"), and Count Four, seeking a summary judgment requiring an accounting and turnover of the postpetition rents and insurance proceeds received by Ms. Robinson pursuant to § 542 of the Bankruptcy Code.  The plaintiff's motion does not address the Rose Rock Property or the Shinnecock Property.  The plaintiff amended her adversary complaint to add these properties after filing her summary judgment motion.

On July 19, 2011, Ms. Robinson filed a pro se request for an extension of time to respond to the trustee's motion due to the disbarment of her original attorney, Marlon Frazier.  The Court granted Ms. Robinson's request, in part, extending the time for her to respond to August 15, 2011.  Ms. Robinson retained counsel and filed a response to the plaintiff's summary judgment motion on August 18, 2011.  Several weeks later, Ms. Robinson's counsel belatedly filed a motion seeking permission to file Ms. Robinson's response out of time.  The Court conducted a hearing on September 19, 2011, and, following the hearing, entered an order allowing Ms. Robinson to file her summary judgment response on August 18, 2011.

In her response, Ms. Robinson asserted that she has a valid separate property claim for "several" of the properties listed in the plaintiff's complaint. She also asserted a community interest in "several other" of the properties. She asserted that she is filing a divorce proceeding against Mr. Prince to determine her "divisible interest" in the various properties.

Mr. Prince is currently incarcerated for bankruptcy fraud, among other crimes.[3] After the plaintiff requested summary judgment, Mr. Prince began filing requests for continuance, motions to be released from his incarceration in order to appear at the summary judgment hearing, and other documents with the Court. He filed an opposition to the trustee's motion for summary judgment on September 2, 2011. In contrast to the response filed by counsel for Ms. Robinson, Mr. Prince submitted evidence with his pro se response, including a copy of the Trust, deposition excerpts, and various other records of questionable authenticity. The plaintiff objected to the specific evidence offered by Mr. Prince as well as to the untimeliness of Mr. Prince's response.

The Court scheduled oral arguments on the plaintiff's motion for summary judgment for November 1, 2011. A few days before the scheduled hearing, on October 26, 2011, Ms. Robinson filed an amended summary judgment response. Her amended response admitted that she has been collecting rentals from the real properties. She asserted, however, that the proceeds have been used to maintain the real properties. She further asserted that she had executed her authority under a power of attorney signed by Mr. Prince to use the proceeds of the car insurance policy to maintain his property during

---

[3] Mr. Prince is challenging his conviction in the district court. Mr. Prince appears to argue that any mention of his conviction for bankruptcy fraud violates his due process rights in light of his motions in the district court seeking an acquittal and a new trial. However, the pendency of these motions, if they are indeed still pending, does not render evidence of his criminal conviction inadmissible. *See, e.g.,* FED. R. EVID. 609.

6

his incarceration.[4]  Her amended response added legal arguments, but did not attach an affidavit or any other supporting evidence.

On the day before the scheduled hearing, Ms. Robinson filed an affidavit in support of her amended response as well as a motion for this Court's permission to allow her late-filed amendment and affidavit in the interest of justice.  In her affidavit, Ms. Robinson stated that her only income is her "small retirement."  She admitted that she relies on the rental from the real properties to pay for her living expenses.  She stated that she used some of her separate property to purchase the home where she presently resides (which is not a subject of this adversary proceeding) as well as the other homes listed in the adversary complaint.  She also stated that she had a community property interest in the home located at 4808 Rose Rock Drive prior to the transfer of that property to the Trust.

Ms. Robinson executed her affidavit on October 28, 2011.  On the day of the hearing, counsel for Ms. Robinson represented that – at some point between the execution of the affidavit and the hearing on October 31st – Mr. Prince removed Ms. Robinson from her position as trustee of the Trust.  He further represented that Mr. Prince has reappointed himself as the trustee of the Trust.[5]

III.   DISCUSSION

This is not a quiet title action.  The issue before the Court is whether the debtors fraudulently transferred their interest – to the extent they had an interest – in the seven

---

[4] Mr. Prince attached the purported power of attorney to his response to the plaintiff's motion for summary judgment.

[5] The Trust agreement defines Mr. Prince as the "Trustor" of the Trust.  Article V of the Trust agreement, entitled "Appointment of Successor Trustee," provides that the Trustee may resign at any time and the Trustor will appoint a replacement.  This provision further states as follows: "At any time during Trustor's lifetime, the Trustor shall have the right to remove the Trustee, with or without good cause."

properties (collectively, the "Real Property") that are the subject of the plaintiff's motion to the Trust. In addition, the plaintiff seeks turnover of the post-petition rental payments Ms. Robinson has collected from the Real Properties in the amount of no less than $103,000 as well as the car insurance proceeds Ms. Robinson received in the sum of $27,305.63.

### A.    Jurisdiction

A proceeding to determine, avoid, or recover fraudulent conveyances falls within this Court's core jurisdiction. *See* 11 U.S.C. §§ 157(b)(2)(H) and 1334(b). Likewise, a proceeding seeking to identify and force the turnover of property alleged to be property of the debtor's bankruptcy estate is a core proceeding. *See* 28 U.S.C. §§ 157(b)(2)(E) and 1334(e). At the hearing on the plaintiff's motion for summary judgment, however, counsel for Ms. Robinson suggested that *Stern v. Marshall,* -- U.S. --, 131 S.Ct. 2594 (2011) means that this Court lacks the authority to exercise its core jurisdiction over the fraudulent transfer claims asserted by the plaintiff.

*Stern* addressed whether bankruptcy courts have the authority to enter judgments in a different type of core proceeding, namely, "counterclaims by the estate against persons filing claims against the estate," 11 U.S.C. § 157(b)(2)(C), which are based on state law. *Stern* described this question as a "narrow" one, and held that Congress exceeded its constitutional authority "in one isolated respect" in granting bankruptcy courts the jurisdiction to enter judgment on such state law counterclaims. *Id.* at 2620. Specifically, *Stern* held that the bankruptcy courts "lacked the constitutional authority to enter final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." *Id.* at 2620. *Stern* referred to its decision as a

"*removal* of counterclaims such as [Debtor's] from core bankruptcy jurisdiction." (emphasis added). Further, *Stern* expressly acknowledged that its decision should not "meaningfully change[ ] the division of labor in [28 U.S.C. § 157]." *Id.*

The statutory provision at issue in *Stern* is not at issue here. This adversary proceeding does not involve a state law counterclaim by the bankruptcy estate. Rather, in this proceeding, the chapter 7 trustee seeks to recover allegedly fraudulent transfers of the Real Property and to identify and force the turnover of certain property alleged to be property of the debtors' bankruptcy estates. The chapter 7 trustee's claims "flow directly from a federal statutory scheme; namely, 11 U.S.C. §§ [542,] 544(b) and 548." *Feuerbacher v. Moser*, No. 4:11-CV-272 *11 (E.D. Tex. Mar. 29, 2011) (citing *In re Refco*, 462 B.R. 181 (Bankr. S.D.N.Y. 2011)). As the U.S. District Court for the Eastern District of Texas recently explained, the expressly narrow holding of *Stern* does not preclude this Court from adjudicating turnover and fraudulent conveyance claims brought pursuant to §§ 542, 544(b) and 548 of the Bankruptcy Code. *See id.* (discussing *Stern* in the context of fraudulent transfer claims brought pursuant to the Bankruptcy Code and applicable state law).

As to the TUFTA cause of action, this Court is not deprived of subject matter jurisdiction simply because resolution of the lawsuit requires the application of state law. *In re Salander O'Reilly Galleries*, 453 B.R. 106, 120-121 (Bankr. S.D.N.Y. 2011). The fraudulent transfer provisions in TUFTA and § 548 of the Bankruptcy Code are "virtually identical." *Scholes v. Lehmann*, 56 F.3d 750, 756 (7th Cir. 1995) (interpreting the Illinois version of the UFTA). Cases interpreting TUFTA are frequently relied on in § 548 cases and vice versa. *See Warfield v. Byron*, 436 F.3d, 551, 558 (5th Cir. 2006). Because the

9

standards are substantially the same, the plaintiff's TUFTA claims are necessarily resolved as part of the plaintiff's fraudulent transfer claim. *See Stern,* 131 S.Ct. at 2620 (bankruptcy court has constitutional authority to issue a final order adjudicating a debtor's state law counterclaim against a bankruptcy claimant where the counterclaim "stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process."). Thus, the Court concludes that it has jurisdiction to enter a final order on all of the plaintiff's claims in this proceeding.

### B.     Fraudulent Transfer Causes of Action

Turning to the plaintiff's fraudulent transfer claims, the plaintiff seeks to avoid the debtors' transfers of Real Property to the Trust under § 548(a)(1)(A) (the actual fraud provision) and § 548(a)(1)(B) (the constructive fraud provision) of the Bankruptcy Code. The § 548 reachback period is limited to two years. *See* 11 U.S.C. § 548(a)(1). Alternatively, the plaintiff seeks to avoid the transfers under TUFTA pursuant to § 544(b) of the Bankruptcy Code. A four-year limitations period applies to fraudulent transfer actions brought under Texas law. *See* TEX. BUS. & COMM. CODE ANN. § 24.010(a)(1).

#### 1.     *Constructive Fraud*

Section 548(a)(1)(B) of the Bankruptcy Code allows trustees to avoid constructively fraudulent transfers, as follows:

> The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within two years before the date of the filing of the petition, if the debtor voluntarily or involuntarily … (B) (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and (ii) (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or (III) intended to incur, or

10

believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

11 U.S.C. §548(a)(1)(B).  The term "value" is defined as "property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or a relative of the debtor."  11 U.S.C. §548(d)(2)(A).

As previously discussed, the fraud provisions in TUFTA are substantially the same as § 548 of the Bankruptcy Code.  Under TUFTA, a transfer may be avoided as constructively fraudulent if it was made for less than reasonably equivalent value and the debtor intended to incur or should have known that he would incur debts beyond his ability to pay as they came due.  *See* TEX. BUS. & COMM. CODE § 24.005(a)(2).  Additionally, TUFTA provides that a transfer is fraudulent if the debtor does not receive reasonably equivalent value and the debtor was insolvent at the time of the transfer. *See* TEX. BUS. & COMM. CODE §24.006(a).[6]

Here, the plaintiff has submitted summary judgment evidence that the debtors transferred their interest in the Real Property to the Trust.  With the exception of the transfer of the 4808 Rose Rock Property, the plaintiff has established that the transfers occurred within the applicable limitations period.  The defendant admits that the debtors did not receive any consideration from the Trust for the transfers of Real Properties.  Indeed, the Trust never had a bank account before April 2010.

---

[6] This statute provides for the avoidance of fraudulent transfers, as follows:  "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation."

C. Prince & Associates Consulting, Inc. ceased operating in December 2008. The bankruptcy schedules filed by Mr. Prince, C. Prince & Associates Consulting, Inc., and Crown Project Management, Inc., show that they were insolvent inasmuch as their liabilities far exceeded their assets. In addition, as discussed more fully below, the claims of several creditors arose before or within a reasonable time of the transfers. The Court, therefore, concludes that the plaintiff has established that the transfers of the Real Property (with the exception of the 4808 Rose Rock Property) were constructively fraudulent in violation of the Bankruptcy Code and TUFTA.

2. *Actual Fraud*

Section 548(a)(1)(A) of the Bankruptcy Code allows trustees to avoid actually fraudulent transfers, as follows:

> The trustee may avoid any transfer … of an interest of the debtor in property … that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted.

11 U.S.C. § 548(a)(1)(A). Similarly, TUFTA provides for the avoidance of actually fraudulent transfers, as follows:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or obligation was incurred, if the debtor made the transfer or incurred the obligation: (1) with actual intent to hinder, delay, or defraud any creditor of the debtor.

TEX. BUS. & COM. CODE § 24.005(a)(1).

Actual intent to hinder, delay or defraud may be established by circumstantial evidence. *Sherman v. FSC Realty, LLC (In re Brentwood Lexford Partners, LLC),* 292

12

B.R. 255, 262–63 (Bankr. N.D. Tex. 2003)).  *See also First Texas Savings Assoc., Inc. v.*

*Reed (In re Reed),* 700 F.2d 986, 991 (5th Cir. 1983).  Circumstantial evidence of actual

fraudulent intent under TUFTA, "commonly known as 'badges of fraud,'" *Soza v. Hill*

*(In re Soza),* 542 F.3d 1060, 1066 (5th Cir. 2008), are codified in a non-exclusive list set

forth in § 24.005(b) of the Texas Business and Commerce Code.  Section 24.005(b)

states:

> In determining actual intent under [§ 24.005(a)(1)], consideration may be
> given, among other factors, to whether: (1) the transfer or obligation was
> to an insider; (2) the debtor retained possession or control of the property
> transferred after the transfer; (3) the transfer or obligation was concealed;
> (4) before the transfer was made or obligation was incurred, the debtor had
> been sued or threatened with suit; (5) the transfer was of substantially all
> the debtor's assets; (6) the debtor absconded; (7) the debtor removed or
> concealed assets; (8) the value of the consideration received by the debtor
> was reasonably equivalent to the value of the asset transferred or the
> amount of the obligation incurred; (9) the debtor was insolvent or became
> insolvent shortly after the transfer was made or the obligation was
> incurred; (10) the transfer occurred shortly before or shortly after a
> substantial debt was incurred; and (11) the debtor transferred the essential
> assets of the business to a lienor who transferred the assets to an insider of
> the debtor.

Like TUFTA, the Fifth Circuit has identified "badges of fraud" that tend to evidence a

transfer made with intent to defraud under § 548(a)(1)(A) of the Bankruptcy Code:

> (1) the lack or inadequacy of consideration; (2) the family, friendship or
> close associate relationship between the parties; (3) the retention of
> possession, benefit or use of the property in question; (4) the financial
> condition of the party sought to be charged both before and after the
> transaction in question; (5) the existence or cumulative effect of the
> pattern or series of transactions or course of conduct after the incurring of
> debt, onset of financial difficulties, or pendency or threat of suits by
> creditors; and (6) the general chronology of events and transactions under
> inquiry.

*Chastant v. Chastant (In re Chastant),* 873 F.2d 89, 91 (5th Cir. 1989) (quoting *Schmit v.*

*Schmit (In re Schmit),* 71 B.R. 587, 590 (Bankr. D. Minn. 1987)).

Here, in addition to the undisputed facts previously discussed, the plaintiff has submitted summary judgment evidence establishing that nearly all of the "badges of fraud" are present in this case.   Mr. Prince was the trustee of the Trust prior to bankruptcy.   The Trust has three beneficiaries according to its terms: Mr. Prince, Ms. Robinson, who is Mr. Prince's common law wife, and Tamika Prince, who is the daughter of Mr. Prince.   Mr. Prince purportedly resigned as trustee of the Trust in April 2010 and appointed Ms. Robinson to serve as trustee.

The debtors did not receive any consideration from the Trust for the transfers of Real Properties.   Mr. Prince was an insider of the Trust.   In addition, Mr. Prince was the president and CEO of C. Prince & Associates Consulting, Inc. and Crown Project Management, Inc. and, therefore, the Trust was an insider to those entities as well.   *See* 11 U.S.C. § 101(31)(A) (defining the term "insider").

The debtors transferred the 4808 Rose Rock Property to the Trust in July 2007 – shortly after a creditor filed a lawsuit against Mr. Prince and C. Prince & Associates Consulting, Inc. arising out of certain promissory notes and guaranty agreements.   The parties settled in December 2007 but, in June 2008, the creditors sued Mr. Prince and C. Prince & Associates Consulting, Inc., for breaching the settlement agreement.   On August 12, 2008, Mr. Prince sent an email to his general counsel, stating: "We need to move assets from Prince & Associate and into other entities quick. I can see a rush to claim our assets by some of these folks."   The debtors transferred two more properties – the Gettysburg Property and the Branding Iron Property – to the Trust in November 2008.

As previously noted, C. Prince & Associates Consulting, Inc., ceased operating in December 2008.   Mr. Prince testified in a deposition that the debtors were unable to meet

their payroll in February 2009.  In August 2009, an architectural firm Mr. Prince had hired to design hotels, office buildings and restaurants for the Rose Rock Property in Oklahoma City, Oklahoma, obtained a judgment against Mr. Prince for approximately $500,000 due and owing to the firm.

The debtors transferred several more properties to the Trust in September and October 2009 – the Norwich Property, the Bush Property, the Lone Pine Property, and the Oakland Hills Property – before filing for bankruptcy in November 2009.  The bankruptcy schedules filed by Mr. Prince, C. Prince & Associates Consulting, Inc., and Crown Project Management, Inc., show that their liabilities far exceeded their assets as of the petition dates.[7]  After the plaintiff initiated this proceeding, a jury convicted Mr. Prince of failing to disclose the challenged transfers on his bankruptcy schedules and, more generally, bankruptcy fraud.

Although the issue of fraudulent intent is a question of fact that usually cannot be resolved on a motion for summary judgment, in this case, the facts are essentially undisputed.  The summary judgment evidence includes direct evidence of intent -- a statement by Mr. Prince that the transfers were made for the purpose of avoiding creditors – as well as circumstantial evidence of the requisite intent.  The "badges of fraud" are clear and undisputed by competent summary judgment evidence.

Even if Ms. Robinson truly has some valid separate or community property interest in the Real Properties, she has failed to raise a genuine issue of material fact as to whether fraudulent transfers of the Real Property occurred.[8]  Ms. Robinson's vague and

---

[7] Under both Texas law and the Bankruptcy Code, a debtor is insolvent if the sum of the debtor's liabilities is greater than the sum of the debtor's assets at a fair valuation.  *See In re Pace*, 456 B.R.at 273.

[8] Mr. Prince filed a tardy opposition to the chapter 7 trustee's summary judgment and has supplemented his opposition twice.  Mr. Prince filed the opposition on his own behalf.  Mr. Prince,

unsubstantiated assertions that she may have a separate property claim to some of the Real Property are not competent summary judgment evidence. *See Nance v. New Orleans and Baton Rouge Steamship Pilots' Ass'n*, 174 Fed.Appx. 849, 854 (5th Cir. 2006). Moreover, to the extent Ms. Robinson asserts a community property claim regarding the 4808 Rose Rock Property (or any of the other Real Properties that are the subject of this proceeding), her interest is property of Mr. Prince's bankruptcy estate. *See* 11 U.S.C. § 541(a)(2) (including community property in the debtor's estate).

For all the forgoing reasons, the Court concludes that the plaintiff has established, as a matter of law, that the debtors' transfers of the Gettysburg Property, the Branding Iron Property, the Norwich Property, the Bush Property, the Lone Pine Property and the Oakland Hills Property to the Trust were actually as well as constructively fraudulent and may be avoided under §§ 544(b), 548 and 550 of the Bankruptcy Code and TUFTA. The transfer of the 4808 Rose Rock Property, however, occurred outside of the two-year reachback period under § 548(a)(1), and that property is located in Oklahoma, not Texas. The Court, therefore, concludes that the plaintiff has not established that the transfer of the 4808 Rose Rock Property was actually or constructively fraudulent under § 548 or TUFTA as a matter of law. The Court now turns to the plaintiff's claims for turnover and an accounting.

---

however, is not a defendant in this proceeding. Moreover, Mr. Prince has failed to provide this Court with competent summary judgment evidence that would raise a genuine issue of material fact as to the chapter 7 trustee's claims. The chapter 7 trustee's objections to the summary judgment evidence submitted by Mr. Prince are well-taken. For example, Mr. Prince's assertion that the disputed transfers occurred when he formed the Trust in 2005 is not competent summary judgment evidence and is contradicted by the record evidence, including the quitclaim deeds effecting the transfers. The "Equal Distribution" that he claims to have signed in 2006, transferring his interest in the corpus of the Trust to others, purports to have been notarized in 2010 (after he filed for bankruptcy protection). In addition, as the chapter 7 trustee points out in his response to Mr. Prince's opposition to summary judgment, Mr. Prince's argument that § 548(e) creates a defense mistakes the nature of that provision. Section 548(e) is not a defense, but an alternate theory of recovery -- and the reachback period is 10 years.

### C.       Turnover

In order to aid the trustee or the debtor-in-possession in collecting the property of the estate, §542 provides that, with two exceptions not relevant here, "an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 ..., or that the debtor may exempt under section 522 ..., shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. § 542(a).  This provision creates an affirmative obligation on the part of the party holding estate property to turn the property over to the bankruptcy trustee.  This affirmative obligation is self-executing and does not require the holding of a hearing or the entry of an order by the bankruptcy court.  *See, e.g., Knaus v. Concordia Lumber Co., Inc. (In re Knaus),* 889 F.2d 773, 775 (8th Cir. 1989); *Boyer v. Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A. (Matter of USA Diversified Products, Inc.),* 100 F.3d 53, 56 (7th Cir. 1996).

Turnover under 11 U.S.C. § 542 is a remedy available to debtors to obtain what is acknowledged to be property of the bankruptcy estate.  *See In re Rosenzweig,* 245 B.R. 836, 839-40 (Bankr. N.D. Ill. 2000).  If there is any dispute as to the existence of the property or the estate's interest in the property, Federal Rule of Bankruptcy Procedure 7001 requires that a plaintiff-trustee assert a turnover claim in an adversary proceeding. *See, e.g., In re Griffin Oil Co., Inc.*, 149 B.R. 419, 424 (Bankr. E.D. Tex. 1992).

Here, the plaintiff seeks turnover of the rents collected by Ms. Robinson from the Real Property as well as the car insurance proceeds.  With respect to the car insurance

proceeds, there is no question that these proceeds were property of the bankruptcy estate.[9] Ms. Robinson does not dispute that she received the car insurance proceeds. Although she asserts that she used the proceeds to maintain Trust property, she does not raise any genuine issue of material fact that would suggest turnover is not required. *See* 11 U.S.C. §542(b) (providing that turnover is not required "to the extent that such debt may be offset under section 553 of this title against a claim against the debtor"). Based upon the foregoing, the Court finds that the plaintiff is entitled to an accounting and to a turnover of the insurance proceeds received by Ms. Robinson. *See* 11 U.S.C. § 542.

With respect to the plaintiff's claim for turnover of the post-petition rents Ms. Robinson has collected from the Real Property, the Real Property was not property of any of the debtors' estates when they filed for bankruptcy. The debtors had fraudulently transferred their interest in the Real Property to the Trust, as this Court has previously discussed, and Ms. Robinson collected the rents from the Real Property on the Trust's behalf.[10] The plaintiff has failed to provide this Court with any authority that would entitle her to a summary judgment requiring Ms. Robinson to turnover the rents she collected prior to the entry of an order or judgment from this Court avoiding the transfers of the Real Property to the Trust. The Court, therefore, concludes that the plaintiff has failed to establish that she is entitled to a summary judgment requiring turnover of the rental proceeds.

---

[9] The only vehicle claimed as exempt in Mr. Prince's bankruptcy schedules was a 2002 Lexus SC430, which he valued at $8,000. Mr. Prince wrecked the car while fleeing from federal authorities post-petition, and Ms. Robinson deposited the insurance payment in the amount of $27,305.63 on April 17, 2010. On July 25, 2011, the Court entered an order sustaining the objections to this exemption raised by one of Mr. Prince's creditors and the plaintiff-trustee.

[10] The rents collected by Ms. Robinson may have been included in a claim for damages arising out of the fraudulent transfers if damages (rather than avoidance of the transfers) had been sought. *See* 11 U.S.C. § 550(a).

### D.      Mr. Prince's Motions for Continuance and Reconsideration

Finally, the Court addresses Mr. Prince's motion to reconsider this Court's October 31st order denying his petition for a writ of habeas corpus to appear and present evidence at the summary judgment hearing [Adversary Docket No. 70].  In addition, after the summary judgment hearing, Mr. Prince filed a fourth motion to continue the summary judgment hearing in the main bankruptcy case [Bankruptcy Case Docket No. 320].   In both motions, Mr. Prince claims that he is a party to this proceeding individually and as an "intervenor" for P&A Real Estate, Inc.

The Trust, not Mr. Prince, is a defendant in this proceeding.   A non-lawyer trustee, such as Mr. Prince or Ms. Robinson, may not represent a trust *pro se* before this Court.  *See Knoefler v. United Bank of Bismarck,* 20 F.3d 347, 348 (8th Cir. 1994) ("A nonlawyer, such as these purported 'trustees *pro se'* has no right to represent another entity, i.e., a trust, in a court of the United States"); *see also C.E. Pope Equity Trust v. United States,* 818 F.2d 696, 697 (9th Cir. 1987) (holding that a *pro se* litigant, who had filed an action as trustee on behalf of a trust, "ha[d] no authority to appear as an attorney for others than himself").  Likewise, with respect to Mr. Prince's claim to represent P&A Real Estate, it is well-settled that a "corporation may appear in the federal courts only through licensed counsel." *Rowland v. California Men's Colony*, 506 U.S. 194, 201-02 (1993).

The purpose of a summary judgment hearing is not to take evidence, but to allow the parties to present arguments based on the evidence submitted with the summary judgment motion and any opposition to that motion.   In this case, the documentary evidence, including Ms. Robinson's response to the plaintiff's motion for summary

judgment, established that Ms. Robinson was serving as the trustee of the Trust at the time the Court ruled on Mr. Prince's writ of habeas corpus. Ms. Robinson's counsel orally indicated at the summary judgment hearing that he understood that Mr. Prince had fired Ms. Robinson and replaced her as trustee of the Trust. Mr. Prince cannot delay hearings or manufacture "get out of jail" free cards by arbitrarily claiming to have removed his common law wife and re-appointed himself as the trustee of the Trust on the eve of a scheduled hearing. For all the foregoing reasons, the Court concludes that Mr. Prince has failed to establish grounds for relief from this Court's October 31st order.

## IV.   CONCLUSION

The plaintiff-trustee is entitled to a partial summary judgment on her claim to avoid the transfers of the Gettysburg Property, the Branding Iron Property, the Norwich Property, the Bush Property, the Lone Pine Property, and the Oakland Hills Property as actually and constructively fraudulent as well as her claim for turnover and an accounting of the car insurance proceeds. The plaintiff-trustee is also entitled to a summary judgment requiring turnover of the car insurance proceeds. In addition, having reviewed the record of this case, the Court finds cause to (1) grant the plaintiff's motion to strike Ms. Robinson's last-minute amendment to her response to the plaintiff's motion for summary judgment [Adversary Docket No. 64], and (2) deny Ms. Robinson's last-minute motion to amend her response to summary judgment [Adversary Docket No. 66].[11]

Signed on 03/30/2012

*Brenda T. Rhoades*          SD
HONORABLE BRENDA T. RHOADES,
CHIEF UNITED STATES BANKRUPTCY JUDGE

---

[11] In order to have a complete record in the event of an appeal, the Court has reviewed and analyzed Ms. Robinson's amendment and notes that, and even if the Court were to allow Ms. Robinson to amend her response to the plaintiff's motion for summary judgment, this Court's analysis would not change.